[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has instituted this action in five counts. The first count relates to claims against Yale University. The second count pertains to claims against Yale University Police Department. The remaining three counts are filed against three police officers of the Yale University Police Department. Each of the counts allege violations by each defendant for the following alleged claims: 1) Violation of the plaintiff's Federal Civil Rights, 2) Violation of the plaintiff's State Civil Rights, 3) Assault, 4) Battery, 5) False Arrest, 6) False CT Page 11728 Imprisonment, 7) Malicious Prosecution, 8) Infliction of Emotional Distress, and 9) Negligence.
In the counts against the defendants Yale University and Yale University Police Department the plaintiffs alleged their failure to institute sufficient policies and to provide training, supervision and/or education to the defendant officers. At the court trial a motion to dismiss the claims against these defendants was granted because of the plaintiff's failure to prove the claims alleged in the first and second counts.
On January 30, 1998 the defendants Sgt. Brian M. Logan, Officer Richard Simons, and Lieutenant McGuffey were police officers on duty at Yale University. At approximately 8:55 P.M. Officer Mark Wilson reported a suspicious person at Davenport College described as a black male, about 6 feet tall with some facial hair and wearing a black puffy down jacket, black pants and a brown cowboy style hat and he was riding a bicycle and appeared to be in his 30s. The suspect fled from the college and was pursued by a security officer until he was out of sight. A description of the subject was broadcast to police cruisers in the area. It was suspected that a bike may have been taken from Davenport College. Sgt. Logan, operating a police cruiser shortly after the broadcast observed a suspect on a green mountain bike who fit the description. He then notified the dispatcher. As he circled the block he observed the suspect talking with someone at Dwight and Chapel Streets. As the cruiser approached the subject he tried to flee on the bike. As Sgt. Logan got out of the car he told the subject to stop, but the subject got off the bike and threw the bike at his legs causing the officer to stumble. The officer chased the subject as he fled, and he also radioed the direction of flight. Officer Simons, the passenger in a cruiser operated by Lt. McGuffey arrived at the scene and ordered him to stop. When the order was ignored he chased the subject and when he caught him they both fell to the ground. The subject continued to struggle with Officer Simons, and Sgt. Logan assisted him to put handcuffs on the person to prevent him from fleeing. The subject was identified as Albert J. Pina, the plaintiff in this action. He was placed in the cruiser to await the arrival of Officer Mark Wilson. Upon his arrival he was unable to identify the plaintiff. Mr. Pina was then placed under arrest for interference with an officer in violation of General Statutes § 53-167a by throwing the bike at him, fleeing from the officer, and then struggling with Officer Simons. After his arrest the plaintiff was released on a bail bond which cost him $50.00. The charge was subsequently nolled by the prosecutor because of identification problems, and the inability to determine if the bike had been stolen.
On February 1, 1998 the plaintiff went to the Yale New Haven Hospital CT Page 11729 emergency room for complaints he had been pushed to the grounds and then kneed by the police and he claimed facial contusions with pain and muscular skeletal strain. He then subsequently obtained further medical attention for his claimed injuries.
The plaintiff argues the testimony of the plaintiff and his witness Paula Wooten was more credible than the evidence presented by the defense and that they established the defendants used excessive force. The testimony of the plaintiff clearly demonstrated that his testimony was not credible regarding his claims of injury and the medical expenses incurred. The plaintiff's explanation for his actions when approached by Sgt. Logan and his flight from the area lacked credibility. Furthermore his testimony that he voluntarily laid down on the ground for Officer Simons also was not credible and it was inconsistent with the history taken at the hospital emergency room two days after the incident. The testimony of Paula Wooten also was not credible and it was apparent she had a strong bias against the police officers. Mrs. Wooten was a family friend of the defendant and her description of what occurred when the plaintiff was apprehended was not supported by the evidence presented to the court.
The claim of the plaintiff that the information provided to Sgt. Logan did not justify Sgt. Logan's approaching the plaintiff because of a different color of his hat, that plaintiff was not wearing a down jacket, and the plaintiff was shorter than six feet in height. In all other respects the description was applicable to the plaintiff, and it was substantially accurate to justify the officer to approach him in performing his investigation.
The defendants argue they were duly qualified municipal police officers of the City of New Haven pursuant to § 7-249d of the Connecticut General Statutes. They content they acted reasonable under all the circumstances, and they acted in good faith which entitled them to qualified immunity. They also argue the plaintiff has failed to sustain the burden of proving the claims alleged in his complaint.
The plaintiff has failed to prove the actions of the defendants resulted in an unlawful stop, chase, detention, assault and battery, and false imprisonment as claimed by the plaintiff. Nor has the plaintiff sustained his burden of proving their actions were malicious and intentional for the purpose of causing harm to him or to violate his civil rights under Federal or State laws.
The Connecticut Appellate Court has established the standards applicable in a case of similar circumstances in the case of Weyel v.Costania, 52 Conn. App. 292 when it stated as follows: CT Page 11730
 "The defense of qualified immunity shields government officials from civil liability if the official's conduct did not violate constitutional rights that were clearly established at the pertinent time or if it was objectively reasonable for the official to believe that the conduct did not violate such rights." (Internal quotation marks omitted.) Greenwood v. New York, 163 F.3d 119, 121 (2d Cir. 1998). "State courts follow federal precedent in interpreting the doctrine of qualified immunity. Martinez v. California, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)." Outlaw v. Meriden, 43 Conn. App. 387, 395, 682 A.2d 1112, cert. denied. 239 Conn. 946, 686 A.2d 122 (1996). "`As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights.' Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994)." Id. "[A]ll claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other `seizure' of a free citizen should be analyzed under the Fourth Amendment and its `reasonableness' standard. . . ." (Emphasis in original.) Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 164 L.Ed.2d 443 (1989).
 "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. See Terry v. Ohio, [392 U.S. 1, 22-27, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968)]. Because `[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' Bell v. Wolfish, 441 U.S. 520, 559 [99 S.Ct. 1861, 60 L.Ed.2d 447] (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id., 396.
CT Page 11731
The facts and circumstances in this case have established the defendants acted reasonably and did not violate the constitutional rights of the plaintiff, or make an unlawful arrest and therefore they were shielded by qualified immunity. The plaintiff at the time of the incident used physical force in striking Sgt. Logan with his bike and in fleeing to resist an arrest by a reasonably identifiable peace officer in violation of § 52a-23 of the Connecticut General Statutes. The actions of the plaintiff did interfere with an officer in obstructing, resisting, hindering and endangering an officer in the performance of his duties as prohibited by § 53a-167a of the Connecticut General Statutes. The defendant police officers were protected by qualified immunity and at the time they were not incompetent nor were they violating the law by their actions. Malley v. Briggs, 475 U.S. 335, 341
(1986); Outlaw v. Meriden, 43 Conn. App. 387, 395 cert. denied,239 Conn. 946 (1996).
The plaintiff has failed to establish by a fair preponderance of the evidence any of his claims, and therefore judgment shall enter for the defendants.
Howard F. Zoarski Judge Trial Referee