**Cynthia HAMILTON, Plaintiff,**

v.

**CITY OF NEW HAVEN
et al., Defendants.**

**No. 3:00–CV–99 (JCH).**

United States District Court,
D. Connecticut.

July 1, 2002.

Anthony A. Wallace, Wallace & O'Neill, New Haven CT, for Plaintiff.

Thomas W. Ude, Jr., Martin S. Echter, Donna Chance Dowdie, Office of Corporation Counsel, City of New Haven, New Haven, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 30]

HALL, District Judge.

The plaintiff, Cynthia Hamilton ("Hamilton"), brought this § 1983 action against the City of New Haven ("City") and several individual New Haven police officers ("defendant officers"), alleging constitutional and state law violations arising out of the execution of a search warrant on the plaintiff's apartment on January 20, 1998.

The defendants move for summary judgment on all of the claims asserted.

Specifically, the defendants argue that the plaintiff's rights under the Constitution were not denied by the execution of the search warrant or the search; the plaintiff was not subject to false imprisonment; defendant Wearing properly trained and supervised the individual defendants; and finally, the defendant officers did not negligently inflict emotional distress on the plaintiff.

The court granted defendants' motion, which was unopposed, after determining the defendants met their burden of demonstrating that, on the record before the court, no material issue of fact existed for trial. The plaintiff then filed an amended motion to reopen the case and reconsider the summary judgment motion, which the court granted (Dkt. No. 40).[1] The court, therefore, now reconsiders the motion for summary judgment in light of the opposition memorandum. For the reasons stated below, the court GRANTS in part and DENIES in part the defendants' motion.

## I. FACTS

On December 25, 1991, a multiple murder occurred in New Haven in the early morning. The murder weapon was identified as a .41 caliber Magnum. Through eyewitnesses, the police were able to identify a suspect and learned that the murder weapon had been seen at the home of a Yolander Foster who maintained a residence at 45 Sheldon Terrace, Apartment 8, in New Haven, Connecticut. A state warrant was obtained on January 20, 1998 to search 45 Sheldon Terrace, Apartment 8.

Hamilton moved into that apartment on January 19, 1998. Although her lease provided for tenancy to begin on February 1, 1998, her landlord allowed her to move in early.

On January 20, 1998, around 11 a.m., the defendant officers, Detectives Troccio, Foti, Cotto, Segarra, and Bashta and Sergeants Peterson and Wardrop, conducted a search of Hamilton's apartment. After forcing open the door, the defendant officers encountered Hamilton coming out of the bathroom. At least some of the officers had guns drawn as they entered. The defendant officers then conducted a sweep of the apartment to ensure the plaintiff was the only person present. Hamilton was ordered to get on the floor and lay face down. According to Hamilton, while she was on the ground, two officers had their feet pressed to her back and guns pointed at her head. The officers dispute her account.

After the protective sweep had been executed and a search conducted, the defendant officers permitted Hamilton to get back on her feet. According to Hamilton, defendant officers then threw her up against the wall. The defendant officers dispute that they threw Hamilton and claim she was hysterically screaming and crying by this point. Hamilton testified at her deposition that the police officers were yelling at her and using profanity. According to the police report, however, it was Hamilton and her daughter who were screaming at the officers. Hamilton also claims that the female officer on the scene refused to identify herself and that the plaintiff only learned that defendant officers were police when the Sergeant identified himself. According to the police report, the officers were in plain clothes, but had on bullet proof vests and badges, and

---

1. Plaintiff failed to file timely opposition papers due to her reliance on Federal Rule of Civil Procedure 56 which calls for a response to summary judgment 10 days before the hearing on the motion. As no hearing had been set in this case, the plaintiff had not filed an opposition. The court directs plaintiff's counsel to Rule 9 of the Local Rules of Civil Procedure for the correct filing dates in this district.

Detective Cotto explained to Hamilton that they were there to execute a search warrant.

Hearing the screaming, the plaintiff's daughter, who lived across the hall, came into the hallway and then was permitted into the apartment to help calm her mother. Hamilton then ran toward and reached for a large handbag which the police seized and searched for weapons. According to Hamilton, she was attempting to get the lease for the apartment out of the bag to show the officers. The defendant officers then left the apartment and arrested Hamilton's daughter for interfering with a search warrant when she refused to obey the officers' directives. The entire interaction lasted approximately twenty minutes.

## II. DISCUSSION

### A. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that she is entitled to judgment as a matter of law. Fed.R.Civ. P.56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994)). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence that would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Graham*, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton* 202 F.3d at 134.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

### B. Violation of Constitutional Rights

Hamilton's complaint sets forth three claims under the Fourth Amendment: one challenging the validity of the warrant, a second alleging that the defendant officers failed to knock and identify themselves before entering her apartment, and a third alleging that the defendant officers used excessive force against her while executing the search warrant.

■ Defendant officers' motion for summary judgment is granted with respect to

plaintiff's invalid warrant claim. Hamilton has not opposed summary judgment on this claim. In addition, she has put forth no evidence corroborating the allegation in her complaint that the information in support of the warrant was unreliable and stale. "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991). Defendant officers have offered evidence that the search warrant was properly issued by a neutral magistrate, and plaintiff has not offered any evidence in refutation. As a result, defendant officers' motion is granted as to the invalid warrant claim.

Hamilton's second Fourth Amendment claim alleges that her rights were violated by the officers' failure to knock and announce themselves before forcibly entering her apartment. The Supreme Court has held that an officer's failure to announce his presence is "among the factors to be considered in assessing the reasonableness of a search or seizure," *Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), and "in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment." *Id.*

■ *Wilson*, however, did not "mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Id.* Rather, the knock-and-announce requirement "could give way under circumstances presenting a threat of physical violence, or where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." *Richards v. Wisconsin*, 520 U.S. 385, 391, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). A

"no knock" entry is justified if the police "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of a crime by, for example, allowing the destruction of evidence." *Id.* at 394, 117 S.Ct. 1416.

■ Hamilton has set forth sufficient facts to support her claim of unannounced entry. She claims that she heard two loud kicks, close in time, and no announcement before the defendant officers broke down the door of her apartment. The defendant officers have not moved for summary judgment with respect to this claim. As a result, plaintiff's claim concerning the entry remains.

■ Hamilton also advances a claim of excessive force in violation of the Fourth Amendment. A person, even if lawfully detained, has a constitutional right to be free from the use of excessive force. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). On the other hand, a police officer is entitled to use such force as is reasonable in light of the circumstances and dangers facing him at the time of the encounter with a citizen. *Id.* at 396, 109 S.Ct. 1865. The police officer may use physical force upon another person when and to the extent it is reasonably necessary to effect a seizure. *Id.*

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the appropriate steps, including the amount of force, that are necessary in a particular situation. *Id.* at 397, 109 S.Ct. 1865. The reasonableness inquiry is an objective balancing, given the

totality of the circumstances, of "the nature and quality of the intrusion on an individual's Fourth Amendment interest against countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (*quoting Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)) (internal quotations omitted).

■ There are genuine issues of material fact in dispute with respect to the circumstances surrounding the search and the degree of force used against the plaintiff. Hamilton alleges that several New Haven police officers ordered her to the ground, pointed guns at her head, pressed their feet against her back, and later threw her against the wall. Hamilton further claims that these events occurred even though she followed the officers' instructions and made attempts to explain that she had just moved into the apartment. Defendant officers contest Hamilton's account and deny completely the use of force against her. Viewing the evidence in the light most favorable to the plaintiff, this court finds that a reasonable jury could determine that the officers used excessive force against the plaintiff in their execution of the search warrant.

Even though the defendant officers' use of force may have been unconstitutional, the court may still grant their motion for summary judgment if it finds that, when viewing the facts in the light most favorable to Hamilton, the defendant officers are entitled to qualified immunity for their conduct. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

> [A] government official sued in his individual capacity ... is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law ...; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant

was not clearly established at the time of the conduct ...; or (3) if the defendant's action was "objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken." These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third.

*X–Men Security, Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999) (citations omitted).

Hamilton claims that her Fourth Amendment right to be free from excessive force during the search was violated. Clearly, use of excessive force by police officers is prohibited by the Constitution. Further, the right to be free from excessive force is "defined at the appropriate level of specificity [to support a finding that] it was clearly established." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "[W]hat 'clearly established' means in this context depends largely 'upon the level of generality at which the relevant 'legal rule' is to be established.'" *Id.* at 614, 119 S.Ct. 1692 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034).

> A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. The unlawfulness must be apparent.

*McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 278 (2d Cir.1999) (citation omitted). As discussed *supra,* it

is well-established that the amount of force used in the execution of a search be reasonable. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A court need not have ruled that "the very action in question" is unlawful, *Lauro v. Charles*, 219 F.3d 202, 214 (2d Cir.2000) (*quoting Anderson*, 483 U.S. at 640, 107 S.Ct. 3034), nor that an act characterized by facts "fundamentally similar" or "materially similar" to the present case violates the constitution, *Hope v. Pelzer*, —— U.S. ——, 122 S.Ct. 2508, 2515–16, 153 L.Ed.2d 666 (2002), in order to defeat qualified immunity. Rather, the "clearly established" standard guarantees only that an official cannot be sued unless the state of the law at the time of the alleged violation gave him "fair warning" that his actions were unlawful. *Id.* The use of excessive force clearly meets this standard.

However, the third prong, whether an "officer of reasonable competence could disagree" as to whether the force used here was reasonable, cannot be resolved on summary judgment. The court cannot find as a matter of law that defendants are entitled to qualified immunity when there is disagreement about what actually occurred. Where, as here, there are disputed facts material to the reasonableness determination, summary judgment on qualified immunity grounds is not appropriate. *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999). Therefore, defendants' motion for summary judgment on plaintiff's excessive force claim is denied.

**C. Liability of City of New Haven and Defendant Officers, Sued in their Official Capacities**

■■ In her amended complaint, Hamilton claims that the City of New Haven is liable for the alleged constitutional and state law violations of several police officers who executed the search warrant at her apartment. Municipalities are subject to section 1983 liability where the "execu-tion of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants correctly argue that Hamilton's pleadings do not set forth a basis for municipal liability, nor does she proffer any evidence at this stage to create an issue of fact that a municipal policy or custom led to the alleged violation of her constitutional rights. As a result, defendants' motion for summary judgment with respect to plaintiff's constitutional claims against the City of New Haven is granted.

■ Summary judgment is also granted to the defendant officers, sued in their official capacities. Suits against government agents in their official capacities do not differ in substance from suits against municipalities, *Bender v. Williamsport Area School District*, 475 U.S. 534, 544, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."), and therefore the same limitations on liability apply. *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (when claims against municipality dismissed, claims against police officers in their official capacities should be dismissed as well). Because plaintiff has offered no evidence that the actions of the defendant officers were taken pursuant to a municipal policy or custom, summary judgment with respect to the defendant officers in their official capacities is appropriate.

**D. False Imprisonment**

■ Hamilton claims that the defendant officers' restraint of her after they completed their security sweep of the

apartment was unlawful and therefore violated Connecticut false imprisonment law. "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Outlaw v. City of Meriden*, 43 Conn.App. 387, 392, 682 A.2d 1112 (1996), *quoting Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 973 (1982).

■■■ A seizure permissible under the Fourth Amendment is not "unlawful" and therefore cannot sustain a claim of false imprisonment. *See Smith v. City of New Haven*, 166 F.Supp.2d 636, 645 (D.Conn. 2001) (arrest supported by probable cause under the Fourth Amendment is not unlawful). However, the facts, when viewed in the light most favorable to Hamilton, do not allow the court to hold that, as a matter of law, defendant officers' restraint of Hamilton was reasonable.

During the execution of a valid warrant to search for contraband, a temporary seizure of the occupant of a premises subject to search is reasonable under the Fourth Amendment. "[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). The Court in *Summers*, however, explicitly reserved the question of whether a search for evidence, not contraband, would justify such a detention. *Id.* at 705, n. 20, 101 S.Ct. 2587.

Other circuits have evaluated the constitutionality of such a detention by applying a balancing test of the law enforcement interests at stake and the nature of the facts supporting the detention. *See, e.g. Leveto v. Lapina*, 258 F.3d 156, 170 (3d Cir.2001) (determining constitutionality of the detention of occupant involves "balancing law enforcement interests and individualized suspicion against the intrusiveness

of the seizure."); *Heitschmidt v. City of Houston*, 161 F.3d 834, 837 (5th Cir.1998) ("Whether a particular seizure falls within the limited authority recognized in Summers to proceed without probable cause depends upon both the character of the official intrusion and its justification"); *United States v. Ritchie*, 35 F.3d 1477, 1482 (10th Cir.1994) (In assessing justification for detention of an occupant of premises being searched, "both law enforcement interest and the nature of the articulable facts supporting the detention are relevant.").

Detention of an occupant during a search may be justified by a number of factors, including the minimal additional intrusiveness of the detention once a search is authorized, and the important law enforcement interests at stake, such as preventing suspect flight and minimizing the risk of harm to officers. *Summers*, 452 U.S. at 701–03, 101 S.Ct. 2587. However, the minimal additional intrusiveness and recognized law enforcement interests described in *Summers* are not always present. *See Leveto*, 258 F.3d at 170. Furthermore, the existence of a search warrant does not eliminate the requirement that even minimally intrusive, investigative seizures be supported by reasonable suspicion. *Id.* at 171–72. Defendant officers have not introduced sufficient factual evidence to support a conclusion that their detention of Hamilton during the search of her apartment was either supported by reasonable suspicion or justified under the analysis articulated in *Summers*.

■■■ Even if requiring Hamilton to remain in the apartment during the execution of the warrant would have been reasonable, however, it is not at all clear that it was reasonable for the defendant officers to force her to lie face down on the floor or stand with her face pressed up against the wall throughout the encounter.

These actions further restrained Hamilton's liberty, over and above the requirement that she remain in the apartment during the search. The court cannot hold that, as a matter of law, this restraint of Hamilton was reasonable under the Fourth Amendment. *See Ingram v. City of Columbus,* 185 F.3d 579, 582 (6th Cir. 1999) (seizure where officers, with guns drawn, placed occupants of premises in handcuffs, formally arrested and struck two of them, not limited or routine as in *Summers* ); *Heitschmidt,* 161 F.3d at 839 (once premises secure, no justification for prolonging physically intrusive detention). Because defendant officers' restraint of Hamilton may have been unlawful, defendant officers' motion for summary judgment with respect to the false imprisonment claim is denied.

Although municipal officials and agents are protected by qualified immunity under Connecticut law, *Lombardi Rest Home, Inc. v. Richter,* 63 Conn.App. 646, 656, 778 A.2d 230 (2001), defendant officers have not moved for summary judgment on these grounds. Therefore, the court will not address this issue.

### E. Failure to Supervise the Defendant Officers

Defendant Wearing seeks summary judgment on Count Three of the Amended Complaint which asserts that he, as Chief of Police for the City of New Haven, failed to properly supervise defendants Peterson, Wardrop, Trocchio, Cotto, Bashta, Segarra and Foti. Hamilton does not oppose summary judgment as to this claim and the court, upon assessing the record, finds that there is no material issue of fact regarding it. Summary judgment with respect to the failure to supervise claim asserting against Wearing is therefore granted.

### F. Negligent Infliction of Emotional Distress

 In order to recover on a claim of negligent infliction of emotional distress, the plaintiff must prove that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *Gomes v. Commercial Union Ins. Co.* 258 Conn. 603, 619, 783 A.2d 462 (2001), *quoting Barrett v. Danbury Hospital,* 232 Conn. 242, 260, 654 A.2d 748 (1995).

 The defendant officers' alleged conduct in this case, taking the facts as Hamilton claims them to be, though upsetting to Hamilton, does not support an action for· negligent infliction of emotional distress. Hamilton does not contest that the defendant officers entered her apartment under the belief that they would encounter criminal activity or evidence of criminal activity therein. Not only was the entry and detention made pursuant to a valid warrant, but the defendant officers had probable cause to believe that an armed individual, possibly the perpetrator of a homicide, may await them inside. As a result, the defendant officers, though allegedly acting with unconstitutional excessive force, could not be expected to know that their actions would lead the occupant of the premises to experience "distress of such a magnitude that it might result in illness or bodily harm." *Rzayeva v. Foster,* 134 F.Supp.2d 239, 251 (D.Conn. 2001).

Furthermore, aside from a general claim in her complaint that she suffered from post-traumatic stress syndrome, Hamilton has not presented any evidence to support her allegation that she actually experienced any serious emotional distress as a result of the incident. In evaluating claims of negligent infliction of emotional

distress, the Connecticut Supreme Court has noted that this tort must be limited so as not to apply to "relatively minor annoyances." *Miner v. Town of Cheshire*, 126 F.Supp.2d 184, 197 (D.Conn.2000), *citing Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978). As a result, defendant officers' motion for summary judgment with respect to Hamilton's claim of negligent infliction of emotional distress is granted.

### III. Conclusion

For the .foregoing reasons, the defendants' Motion for Summary Judgment [Dkt. No. 30] is GRANTED IN PART and DENIED IN PART. As to all claims against the officers in their official capacities and against the City of New Haven, summary judgment is GRANTED. As to the remaining claims against the defendant officers in their individual capacities, defendants' motion for summary judgment is GRANTED with respect to plaintiff's claims regarding the invalid warrant, failure to supervise, and negligent infliction of emotional distress. With respect to plaintiff's Fourth Amendment claims relating to the defendant officers' alleged failure to knock and announce themselves before entry and their alleged use of excessive force during the search and seizure and plaintiff's false imprisonment claim, defendants' motion for summary judgment is DENIED.

**SO ORDERED.**