[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The plaintiffs, Lisa Caruso and her minor daughter, Carisa Caruso, have filed this action against the board of education of the city of Milford. The plaintiff's claim that Carisa Caruso, a first grade student at Live Oaks Elementary School, fell while playing on a ring set apparatus on the school grounds, fracturing her nose and sustaining other injuries. The revised complaint is in four counts. Count one, based on negligence, alleges, inter alia, that the board of education, acting through its agents, failed to provide a protective surface under the ring set, failed to adequately supervise and warn users of inherent dangers in use of the ring set, failed to comply with the standards of the Consumer Product Safety Commission and maintained the ring set in an unsafe and dangerous condition. Count two, based on negligent supervision, alleges that the minor plaintiff experienced anxiety and emotional upset.[1] Count three is a derivative claim by the mother seeking reimbursement for medical expenses paid. Count four alleges the same facts as contained in count one, but is based on reckless indifference. The defendant has answered, denying the allegations of the complaint. The answer also raises three special defenses of governmental immunity, contributory negligence on behalf of Carisa Caruso and that each count of the complaint fails to state a claim upon which relief can be granted.[2] The plaintiffs have filed a reply, denying the allegations of each of the special defenses.
The defendant has moved for summary judgment. The defendant claims that each count of the complaint is barred by the doctrine of governmental immunity. In addition, the fourth count, based on reckless indifference, fails to state a claim as a matter of law. A memorandum of law and the affidavit of Mary Jo Kramer, Milford superintendent of schools, is filed in support of the motion. The plaintiffs have filed a memorandum in opposition. The plaintiffs have not filed any opposing affidavits or other documentary evidence.[3] The defendant has also filed a reply memorandum and the affidavit of Mary Petrucci, Carisa Caruso's first grade teacher, in support of its motion for summary judgment. CT Page 16307
"A party raising the special defense of governmental immunity may properly bring a motion for summary judgment on that basis." Marceau v.Norwich, 46 Conn. Sup. 197, 200, 746 A.2d 836 (1999). Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp., 233 Conn. 732, 751, 660 A.2d 810
(1995). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law." Appleton v. Board of Education, supra, 209. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) UnitedOil Co. v. Urban Development Commission, 158 Conn. 364, 379, 260 A.2d 596
(1969).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." Maffucciv. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55, 707 A.2d 15
(1998). "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Appleton v. Board of Education, supra, 254 Conn. 209.
 I
The defendant claims that governmental immunity is a complete bar to this action as the plaintiffs have not cited any statute as the basis for the defendant's liability. In Williams v. City of New Haven, 243 Conn. 763,707 A.2d 1251 (1998), the plaintiff sued the city of New Haven in common law negligence when her minor son was injured after being stricken by a high velocity stream of water from an open fire hydrant. The plaintiff had not pleaded any statute, nor had she advanced any statute as the basis of the defendant's liability at any time in the proceedings. Id., 766. After briefly reviewing the doctrine of governmental immunity, the court stated, "the general rule developed in our case law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." Id., CT Page 16308 766-67. In ordering that judgment be directed for the city, the court held that "[b]ecause it is clear that a municipality enjoys governmental immunity for common-law negligence unless a statute has limited or abrogated that immunity, the plaintiffs cannot prevail. The plaintiffs do not rely on any such statute, and they have failed to name an agent, officer or employee of the municipality and to invoke indemnification pursuant to § 7-465. The doctrine of governmental immunity, therefore, is fatal to their cause of action against the defendant." Id., 769.
The failure to rely on a statute as the basis for municipal liability was again addressed in Tryon v. Town of Nlorth Branford, 58 Conn. App. 702,755 A.2d 317 (2000). The plaintiff, who was bitten by a dog at a fireman's convention parade, sued the volunteer firefighter who owned the dog, as well as the fire department and the town of North Branford in a multi-count complaint. Although the court denied summary judgment in other counts where the plaintiff had relied on a statute as the basis for municipal liability, summary judgment was granted as to three counts where the plaintiff had "not cited any statute that would abrogate the governmental immunity for common law negligence enjoyed by These defendants." (Citation omitted.) Id., 719.[4]
If a plaintiff does not plead reliance on a statute as the basis for a town's liability, the plaintiff must at least raise its reliance on a statute at some point in the proceeding. In Colon v. City of New Haven,60 Conn. App. 178, 188 n. 4, 758 A.2d 900, cert. denied, 255 Conn. 908,763 A.2d 1034 (2000), the court stated, "[i]n this case, unlike inWilliams [v. City of New Haven, supra, 243 Conn. 763], the plaintiffs raised General Statutes § 52-557n, which sets forth general principles of municipal liability and immunity, in opposing thedefendant's motion for summary judgment." (Emphasis added.) As long as the plaintiff raised its reliance on the statute, the defendant was apprised of the nature of the action and it was not mandatory that the plaintiff specifically pleaded the statute in the complaint. Id.
Similarly, in Spears v. Garcia, 66 Conn. App. 669, ___ A.2d ___ (2001), the defendant, city of Bridgeport and Bridgeport fire department, moved for summary judgment claiming governmental immunity, as the plaintiffs had not pleaded any statute on which liability was based. The court noted that the plaintiffs "filed a memorandum in opposition to the motion for summary judgment. In the memorandum, the plaintiffs mentioned for the first time § 52-557n as abrogating the defendants' immunity." Id., 672. The court continued, "[h]ere, the plaintiffs did fail to plead § 52-557n in their complaint. Unlike the plaintiffs inWilliams, however, the plaintiffs in the present case relied on the statute in their memorandum of law in opposition to the motion for CT Page 16309 summary judgment and in oral argument before the trial court. That sufficiently apprised the defendants that the plaintiffs were relying on § 52-557n to abrogate governmental immunity." Spears v. Garcia,
supra, 676. "We therefore hold that under Williams, although a plaintiff should plead a statute in a complaint that abrogates governmental immunity, failing to do so will not necessarily bar recovery as long as the defendants are sufficiently apprised of the applicable statute during the course of the proceedings." Id. The fact that the plaintiffs at least relied on the statute, in their memorandum opposing the motion for summary judgment and again at oral argument, distinguished the case fromWilliams v. City of New Haven, supra, 243 Conn. 763, where the plaintiff neither pleaded reliance on a statute nor raised its reliance at any stage of the proceedings.
In this case, the first three counts of the complaint are based on common law negligence. The fourth count is based on reckless indifference. No statute is cited in the complaint and no statute is mentioned as a basis for liability in the plaintiffs' memorandum in Opposition to summary judgment. At oral argument on the defendant's motion for summary judgment, counsel for the plaintiff explicitly stated that she did not have to rely on a statute and that after Colon v. City of NewHaven, supra, 60 Conn. App. 178, "reliance on a statute is discretionary." The plaintiff has also not brought this action against an officer, agent or employee of the city of Milford and sought municipal indemnification pursuant to General Statutes § 7-465. As the plaintiffs have failed to cite any statutory basis for the abrogation of the doctrine of governmental immunity, at any time in these proceedings, summary judgment will enter for the defendant.
 II
As creatures of the state, towns and cities have no sovereign immunity. "A suit against a municipality is not a suit against a sovereign. Towns have no sovereign immunity, and are capable of suing and being sued . . . in any action." (Internal quotation marks omitted; citations omitted.) Murphy v. Ives, 151 Conn. 259, 264, 196 A.2d 596
(1963). Municipalities do, however, have a limited form of court-made governmental immunity when engaged in a governmental function. "Municipal immunity is generally described as a court made rule and has its origins in the case of Russell v. Men of Devon, 100 Eng. Rep. 359 (1788)."Giannitti v. Stamford, 25 Conn. App. 67, 79, 593 A.2d 140, cert. denied,220 Conn. 918, 597 A.2d 333 (1991).[5]
The Connecticut Supreme Court has stated "municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion." CT Page 16310Elliott v. Waterbury, 245 Conn. 385, 411, 715 A.2d 27 (1998). In defining what is a governmental act, the inquiry begins with the "public duty doctrine" which distinguishes public duties from so-called private duties. See Shore v. Stonington, 187 Conn. 147, 152, 444 A.2d 1379
(1982); Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 166,544 A.2d 1185 (1988). "[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public and not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages."Leger v. Kelley, 142 Conn. 585, 589-90, 116 A.2d 429 (1955). "[T]he test is this: If the duty imposed upon the public official . . . is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the [action] is one which imposes upon the official a duty to the individual, and if the official is negligent in the performance of that duty he is liable to the individual." Roman v. Stamford, 16 Conn. App. 213,220, 547 A.2d 97 (1988), aff'd, 211 Conn. 396, 559 A.2d 710 (1989). Therefore, if a private duty is involved, an individual can bring a private action against the municipal employee. If a public duty is involved, however, further analysis of the type of public duty is necessary. The court finds the duty of the Milford. board of education to provide public education and the incidents thereto, including the maintenance of the ring set apparatus and the supervision of school children, to be a public duty. See Heigl v. Board of Education of NewCanaan, 218 Conn. 1, 8, 587 A.2d 423 (1991); Couture v. Board ofEducation, 6 Conn. App. 309, 312-13, 505 A.2d 432 (1986).[6]
In that the duty involved is a public duty, "the issue of municipal liability may also turn upon whether the specific act in issue was ministerial or discretionary. When municipalities are engaged in proprietary or ministerial activities, their actions are not considered governmental and, accordingly, they do not enjoy immunity from negligence resulting from such activities." Roman v. Stamford, supra,16 Conn. App. 221; see also Elliott v. Waterbury, supra, 245 Conn. 411. A municipal official has a qualified immunity in the performance of a governmental, or discretionary, duty but he may be liable if he misperforms a ministerial act. Evon v. Andrews, 211 Conn. 501, 505,559 A.2d 1131 (1989). "[A]lthough the public duty doctrine provides the starting point of analysis, distinctions between discretionary acts and ministerial acts are often controlling without regard to whether the duty is ascertained to be public or private." Gordon v. Bridgeport HousingAuthority, supra, 208 Conn. 170. In fact, "[t]he public/private duty distinction and the ministerial / discretionary test may appear to CT Page 16311 overlap." Id., 168. "The hallmark of a discretionary act is that it requires the exercise of judgment. On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." Colon v. City of NewHaven, supra, 60 Conn. App. 181; Gordon v. Bridgeport Housing Authority,
supra, 208 Conn. 167-68. "Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint." (Citations omitted.) Colon v. City of New Haven,
supra, 181.
On the basis of the affidavits submitted by the defendant, the court finds that there are no written policies or directives on behalf of the board of education as to the maintenance of the ring set apparatus and the supervision of children in the playground.[7] The manner of supervision is left up to the discretion of the teachers who may be supervising the particular recess period. The court finds that the maintenance of the ring set apparatus and the supervision of the children at recess were discretionary acts. See Beach v. Regional School DistrictNumber 13, 42 Conn. App. 542, 554, 682 A.2d 118, cert. denied,239 Conn. 939, 684 A.2d 710 (1996).[8]
In that the court has found that the actions of the Milford board of education were discretionary, the board would ordinarily be immune from liability unless the action fell within an exception to the rule that a municipal employee may not be held liable for his discretionary acts. There are "three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Citations omitted.) Colon v. City of New Haven, supra,60 Conn. App. 180-81; Evon v. Andrews, supra, 211 Conn. 505.
The plaintiff's claim that the facts of this case fall under the "identifiable person/imminent harm" exception to the doctrine of governmental immunity.[9] For this exception to apply, the plaintiff must allege facts sufficient to support a finding both that the plaintiffs were identifiable persons and that the plaintiffs were subject to imminent harm. Shore v. Stonington, supra, 187 Conn. 156. The "identifiable person" aspect of this exception has been construed "to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims." Burns v. Board of Education,
CT Page 16312228 Conn. 640, 646, 638 A.2d 1 (1994). "[S]choolchildren who are statutorily compelled to attend school, during school hours on school days, can be an identifiable class of victims." Purzycki v. Fairfield,244 Conn. 101, 109, 708 A.2d 937 (1998); Burns v. Board of Education,
supra, 228 Conn. 650. The court finds that the plaintiff, Carissa Caruso, as a student at Live Oaks Elementary School at the time of her injury, was a member of an identifiable class of victims. The defendant would still be immune from liability, however, unless it was apparent that the failure to act in some manner would also likely subject Carissa Caruso to imminent harm. A brief review of the precedents, on which the "imminent harm" aspect of this exception is based, is necessary.
The first application by the court of this exception to the doctrine of governmental immunity was in Sesito v. Groton, 178 Conn. 520, 423 A.2d 165
(1979). In that case, a police officer saw seven men, one of whom he thought was armed and a robbery suspect, in the parking lot of a bar. The men had been drinking and the officer observed them arguing, scuffling and punching. The officer did not intercede until after a shot was fired and the plaintiff's decedent was killed. Id., 522-23. In holding that the case should have been submitted to the jury, the court felt that the facts presented a situation that the police officer should have known required immediate intervention in order to prevent injury to the plaintiff. See Id., 526. Although the doctrine was not yet explicitly stated by the court, the facts presented a situation where the. potential for harm was imminent.
The court next applied the imminent harm to an identifiable victim exception in Shore v. Stonington, 187 Conn. 147, 444 A.2d 1379 (1982). In that case, a police officer stopped a driver after observing him speeding and crossing the center line of the highway a few times. Although the officer suspected that the driver was intoxicated, he did not arrest the driver and only warned him to have his girlfriend drive. Less than one hour later, the driver struck and killed the plaintiff's decedent. The court held that the officer had no reason to know that his failure to arrest the intoxicated driver would subject an identifiable person to imminent harm. Id. 154, 156.[10]
The court further defined the scope of the exception in Evon v.Andrews, supra, 211 Conn. 501, in concluding that the facts of that case did not meet the requirements of the exception. The plaintiffs had alleged that municipal officials failed to adequately inspect and enforce fire code regulations with respect to a particular building. The failure allegedly resulted in a fire in which several residents of the building died. The court concluded that the risk of harm was not "imminent" because, "[i]n the present instance, the fire could have occurred at any future time or not at all." Id., 508. CT Page 16313
The court has addressed this exception in a series of decisions involving a school setting. In Burns v. Board of Education, supra,228 Conn. 640, a fourteen year old high school student broke his elbow when he slipped on a sheet of ice on a main courtyard at the school. Despite school policy requiring the custodian to inspect and apply salt and sand "as necessary," the ice patch was neither salted nor sanded. Id., 642. The court distinguished Evon v. Andrews, supra, 211 Conn. 501, holding that "this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly "treacherous" area of the campus. Further, the potential for harm from a fall on ice was significant and foreseeable. Id., 650. The court, therefore, defined the concept of imminent harm to be a condition which is limited to the duration of a temporary dangerous condition and limited to the area where the temporary dangerous condition exists. The court also required that the potential for harm be significant and foreseeable. Id.
In Purzycki v. Fairfield, supra, 244 Conn. 101, an eight year old second grade student was, injured when he was tripped by a fellow student while running down an unsupervised hallway from the lunchroom to the playground. A divided court found that the situation did present the threat of imminent harm to the plaintiff in that it involve[d] a limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess. Also, it involve[d] a temporary condition, in that the principal testified that every other aspect of the lunch period involved supervision. Finally, the risk of harm was significant and foreseeable, as shown by the principal's testimony that if elementary schoolchildren are not supervised, they tend to run and engage in horseplay that often results in injuries." (Citation omitted; internal quotation marks omitted.) Id., 110. The court thus repeated the requirements that for imminent harm to be present, the harmful situation must involve a limited time period and limited geographical area, as well as be limited to a temporary condition. In addition, the risk of harm must be significant and foreseeable. Id. It was important to the decision that the risk of harm was foreseeable, in that the court pointed out that the "school administrators were aware that unsupervised children are more likely to run and engage in horseplay leading to injuries. Therefore, because the school administrators here had reason to foresee the danger that could occur on a daily basis, the harm in the present case was not as remote a possibility as was the harm in Evon [v. Andrews, supra, 211 Conn. 501]." Id., 111. Subsequent decisions uniformly apply the test established in Burns v. Board ofEducation, supra, 228 Conn. 640.[11] The court, therefore, must examine the facts of the complaint, in the light most favorable to the CT Page 16314 plaintiff, to see if the danger alleged involved a limited time period and limited geographical area and if the danger alleged was a temporary condition. In addition, the court must determine if the risk of harm was significant and foreseeable.
Viewed in the light most favorable to the plaintiff, the complaint alleges a situation where the plaintiff was playing on a ring set apparatus in the playground during recess when she unfortunately lost her grip and fell. Although the injury to the plaintiff did occur during the limited time period of recess and in the limited geographical area of the playground, no evidence has been presented that any danger alleged was limited to a temporary condition. Rather, the condition of the. playground. was permanent and recess was recurring. The court views this situation to be similar to that in Evon v. Andrews, supra, 211 Conn. 508, where any injury to the plaintiff "could have occurred at any future time or not at all." No facts have been presented which would distinguish the condition of the playground, in the recess period that the plaintiff fell, from any recess period in the past or in the future.
In every case where imminent harm was found in a school setting, the school personnel in some manner were found to be lacking in the standard of care owed to school children. See Burns v. Board of Education, supra,228 Conn. 646-49. In each case, it should have been foreseeable to the school personnel that the failure to act subjected the students to the significant risk of harm.[12] In this case, the plaintiff alleges that the ring set was unsafe and dangerous, that the defendant should have posted signs warning young users of the danger of the ring set and that protective material should have been placed under the ring set. The complaint also alleges that supervision would have been better if there were more staff, if there was a spotter for the children and if chalk was provided to the users of the ring set. While the claims made by the plaintiff, if implemented, may make for an optimally safer playground environment, no affidavit or other documentary evidence submitted shows in what manner the actions by the defendant failed to achieve the requisite standard of care. The unfortunate reality is that children are, at times, injured while playing on a playground. Unless a school system can provide personnel to monitor each of the play areas, children can lose their grip and fall from slides, swings, ring sets, seesaws, monkey bars and merry-go-rounds. The only manner that injuries on a playground can be absolutely prevented, is to absolutely prevent children from using our playgrounds.
The court finds that, under these facts and the lack of evidence presented, the condition of the playground was not of a temporary nature. In addition, the risk of harm from falling from the ring set was no more foreseeable than the risk of harm from falling from other pieces of CT Page 16315 equipment on the playground. The plaintiff was, therefore, not subject to imminent harm. The defendant is immune from liability. Summary judgment is granted as to the first, second and third counts, both because of the failure of the plaintiffs to raise any statute as the basis for abrogating the defendant's governmental immunity and because the facts, as presented, do not raise an exception to the doctrine.
 III
In count four of the complaint, the plaintiffs make the same factual allegations as in the counts based on negligence, but claim that the plaintiff's injuries were caused by the reckless indifference of the defendant. In their brief, the plaintiffs maintain that "since there exists a special relationship [between] the defendant and the plaintiff the fact that the plaintiff's injuries occurred establishes recklessness." This position was repeated by the plaintiff in oral argument on the defendant's motion for summary judgment.
Reckless indifference is not a recognized cause of action. Pitts v.Carabillo, judicial district of Danbury, Docket No. 334727 (May 22, 2000, Carroll, J.). Reckless indifference may be a factor in deciding whether to award punitive damages. See Berry v. Loideau, 223 Conn. 786,811, 614 A.2d 414 (1992). No claim for punitive damages is made in the complaint. In addition, in the fourth count, based on reckless indifference, the plaintiffs merely rephrase the factual allegations made in the first count, based on negligence. Viewing the facts of the complaint most favorable to the plaintiff, no facts are alleged which would satisfy the conduct or mental state required to support a Claim of recklessness.
 "Recklessness is a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence. The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. Wanton misconduct is reckless misconduct. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. Its characteristic element is the design to injure either actually entertained or to be implied from the conduct CT Page 16316 and circumstances. Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) Dubay v. Irish, 207 Conn. 518, 532-33, 542 A.2d 711 (1988).
Taking allegations which sound in negligence and calling them recklessness does not make it so. See. Kostiuk v. Queally, 159 Conn. 91, 94-95, 267 A.2d 452 (1970).
The court finds that there is no genuine issue that the facts, as pleaded, do not support a claim of "reckless indifference", even if such were a valid cause of action and that the defendant is entitled to judgment as a matter of law. As the plaintiffs have failed to raise any statute as the basis for abrogating the defendant's governmental immunity and because the facts, as presented, do not raise an exception to the doctrine and do not support a claim for reckless indifference, summary judgment is also granted as to the fourth count.
MORAN, J.